**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KIMBERLY DECKER,**

                **Plaintiff,**　　　　　　　3:13-cv-662
　　　　　　　　　　　　　　　　　　　　　　　(GLS)
        v.

**COMMISSIONER OF SOCIAL**
**SECURITY**,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | DANIEL R. JANES |
| United States Attorney | DAVID L. BROWN |
| 100 South Clinton Street | Special Assistant U.S. Attorneys |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiff Kimberly Decker challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.)[1] After reviewing the administrative record and carefully considering Decker's arguments, the Commissioner's decision is reversed and remanded.

**II. Background**

On May 23, 2007, Decker filed an application for SSI under the Social Security Act ("the Act"), alleging disability since December 31, 2006. (Tr.[2] at 116, 261-63.) After her application was denied, (*id.* at 133-36), Decker requested a hearing before an Administrative Law Judge (ALJ), which was held on September 10, 2009, (*id.* at 139, 41-74). On September 25, 2009, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 117-28.) At Decker's request, the Appeals Council remanded the decision to the ALJ to further develop the record and obtain testimony from

---

[1] Because no application for Disability Insurance Benefits (DIB) appears in the record and it is otherwise clear that Decker's request for review pertains only to her application for SSI, the court ignores the mistaken reference to DIB in her complaint. (Compl. ¶ 1.)

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

2

a vocational expert (VE).  (*Id.* at 129-32.)  A second administrative hearing was held on September 21, 2011.  (*Id.* at 75-115.)  On December 29, 2011, the ALJ issued an unfavorable decision again denying the benefits.  (*Id.* at 17-37.)  That decision became the final decision of the Commissioner when the Appeals Council denied Decker's request for review.  (*Id*. at 2-8.)

Decker commenced the present action by filing her complaint on June 10, 2013 wherein she sought review of the Commissioner's determination.  (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 7, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 13, 17.)

### III.  **Contentions**

Decker contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 13 at 5-20.)  Specifically, Decker contends that the ALJ erred in: (1) evaluating her intellectual deficits; and (2) making his step five determination.  (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (Dkt. No. 17 at 5-17.)

### IV.  **Facts**

3

The court adopts the parties' undisputed factual recitations. (Dkt. No. 13 at 2-5; Dkt. No. 17 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Intellectual Deficits

*1. Severity Determination*

Decker argues first that the ALJ failed to properly assess the severity of her borderline intellectual functioning. (Dkt. No. 13 at 5-12.) According to Decker, the ALJ's severity determination with respect to her intellectual

---

[3] 42 U.S.C. § 1383(c)(3) renders § 405(g) of Title 42 applicable to judicial review of SSI claims.

deficits is tainted by legal error and not supported by substantial evidence,[4] and, further, that this error requires remand. (*Id.*) The court disagrees that remand is appropriate on this basis.

At step two of the sequential evaluation, a claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921(b)(3)-(6). An ALJ's evaluation of a claimant's mental impairments must reflect his application of the "special technique" set out in 20 C.F.R. § 416.920a, which necessitates his consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration,

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

persistence, or pace; and episodes of decompensation." *Id.* § 416.920a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)). Notably, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his residual functional capacity (RFC) determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

In this case, at step two, the ALJ determined that Decker suffered from three severe impairments: mild scoliosis, generalized anxiety, and depression. (Tr. at 22.) In making this determination, the ALJ made findings in each of the four broad functional categories set out in the regulations, finding that Decker suffers mild restrictions in performing

6

activities of daily living, and moderate difficulties in maintaining social functioning, as well as concentration, persistence, and pace. (*Id.* at 23-24.) The ALJ also considered Decker's intellectual functioning and noted her 2010 IQ scores. (*Id.* at 25) However, the ALJ determined that Decker's other records do not support the conclusion that she is functioning within the range of borderline intellectual functioning. (*Id.*) The ALJ pointed to the mental status examination results of consultative examiner Dennis Noia, Decker's ability to obtain her GED, and her "broad range of daily activities." (*Id.*) Thus, the ALJ determined that, although Decker suffers severe mental impairments, her borderline intellectual functioning does not cause more than minimal limitations on her ability to perform basic mental work activities. (*Id.* at 25.)

Decker argues that the ALJ's severity determination is not supported by substantial evidence, as her mental limitations have more than a minimal effect on her ability to perform the basic mental work activities. (Dkt. No. 13 at 5-9.) Indeed, only *de minimis* claims may be screened out at step two of the analysis. *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Here, Decker's IQ scores indicate that she "is functioning on a borderline intellectual level," and is able to read at a seventh grade level.

7

(Tr. at 524-25.) Consultative examiner Sara Long, who administered Decker's 2010 intelligence test, opined that Decker suffers a "a substantial loss in the ability to effectively" make judgments on complex work-related decisions, but that she is able to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions. (*Id.* at 528.) Decker argues that Dr. Long's evaluation demonstrates that she has significant limitations in her ability to work. (Dkt. No. 13 at 9.) However, even if the ALJ erred in his evaluation of Decker's intellectual deficits at step two, as the ALJ continued the sequential analysis and considered Decker's severe and non-severe impairments in his RFC determination, any such error is harmless. (Tr. at 26-30); *see Tryon*, 2012 WL 398952, at *4.

    *2.    RFC Determination*

Decker also claims that, when making his RFC determination, the ALJ failed to acknowledge her intellectual deficits or include any limitations arising therefrom. (Dkt. No. 13 at 9-12.) Specifically, Decker argues that "the mental limitations found by the ALJ in the RFC determination are related to [her] psychiatric issues . . . and not her borderline intellectual functioning." (*Id.* at 9.) This argument is wholly without merit. In fact, in

8

making his RFC determination, the ALJ discussed Dr. Long's consulting examination report—which contains the diagnosis of borderline intellectual functioning—as well as her opinion of Decker's functional abilities. (Tr. at 28, 526.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Dr. Long's opinion supports the ALJ's determination that Decker can "understand, remember, learn new, and perform simple rote tasks[, as well as] maintain attention and concentration for those tasks." (Tr. at 26, 525-26, 528-29.) In addition, the opinions of Dr. Noia, who examined Decker in July 2007, and non-examining medical consultant R. Altmansberger support the ALJ's RFC determination. (*Id.* at 398-402, 429-31.) *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)

9

("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Thus, the ALJ appropriately considered the limitations arising out of Decker's intellectual deficits and his RFC determination is supported by substantial evidence.[5]  Therefore, contrary to Decker's contentions, (Dkt. No. 13 at 10-11), the ALJ appropriately relied on the RFC determination when questioning the VE, without explicitly indicating a claimant whose intellectual functioning is in the borderline range, (Tr. at 26, 107-08); *see Mancuso v. Astrue*, 361 F. App'x 176,179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE).

B. <u>Step Five Determination</u>

   1. *Conflict with the Dictionary of Occupational Titles (DOT)*

Decker next contends that the testimony of the VE was in conflict with the DOT.  (Dkt. No. 13 at 13-15.)  In particular, Decker claims that the jobs

---

[5] Notably, Decker does not contest the ALJ's RFC assessment with respect to her physical impairments.  (*See generally* Dkt. No. 13.)

10

the VE testified that she could perform are inconsistent with the ALJ's RFC determination, which limited Decker to simple rote tasks. (*Id.*) The court disagrees.

In making his ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy. *See* 20 C.F.R. §§ 416.920(g), 416.960(c); *White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). To make such a determination, an ALJ may rely on the Medical-Vocational Guidelines, referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 416.969; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by h[er] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a VE before making a determination as to

disability. *See id.* Social Security Ruling 00-4p sets forth that the "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000). In the event of a conflict between the two, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.*

Here, the VE testified that a claimant of Decker's age, education, work experience, and RFC can perform the jobs of office helper, and mail-room clerk. (Tr. at 106-08.) Decker argues that this testimony was in conflict with the DOT which classifies a mail-room clerk at reasoning level three, meaning that the person must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, [and d]eal with problems involving several concrete variables in or from standardized situations." Dictionary of Occupational Titles, Code 209.687-026, 1991 WL 671813 (4th ed., 1991). Further, the DOT classifies an office helper at reasoning, math, and language level two, requiring application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions[, the ability to d]eal with problems

12

involving a few concrete variables in or from standardized situations[, and the ability to a]dd, subtract, multiply, and divide all units of measure." *Id.*, Code 239.567-010, 1991 WL 672232 (4th ed., 1991). An office helper must also be able to "[p]erform the four operations with like common and decimal fractions[, c]ompute ratio, rate, and percent[, d]raw and interpret bar graphs[, and p]erform arithmetic operations involving all American monetary units." *Id.* Language level two requires the ability to "[r]ead at rate of 190-215 words per minute[, r]ead adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation[, and r]ead instructions for assembling model cars and airplanes." *Id.*

Although some district courts in this Circuit have held that a reasoning level greater than one conflicts with a hypothetical limiting the claimant to simple work, *see Santos v. Astrue*, 709 F. Supp. 2d 207, 212 (S.D.N.Y. 2010) (holding that a VE's testimony was in conflict with DOT standards where the hypothetical individual was limited to "simple one or two step tasks" and "simple instructions," a description commensurate with a DOT reasoning development level of one, and the VE described reasoning level two jobs (internal quotation marks and citation omitted)), a

growing number of courts have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple, routine work, *see, e.g., Reynolds v. Comm'r of Soc. Sec.*, No. 1:11-cv-00778, 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012) (holding that a limitation to "simple work" does not preclude a job that has a reasoning development level of two or three); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (holding that reasoning levels of two and three are not inconsistent with a limitation to short, simple instructions); *Cross v. Astrue*, No. 08-CV-0425, 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) (finding no error in the ALJ's conclusion that a claimant limited to simple, low-stress, and entry-level work, with no complex decision-making could perform jobs with a reasoning level of two or three); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding that two unskilled, level three reasoning jobs were not "complex"); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (holding that level three reasoning was not inconsistent with the ability to perform only "simple work"). Here, the ALJ clearly found that Decker's cognitive deficits were not as limiting as she alleged, based on the medical opinions of record, her activities of daily living, including caring for three children, and her receipt

of a GED. (Tr. at 25.) Indeed, Dr. Long opined that Decker is only moderately[6] limited in her ability to understand, remember, and carry out complex instructions. (*Id.* at 528.) Further, on examination by Dr. Noia, Decker was able to count, do simple calculations, and perform serial threes, and she testified that she can read simple recipes. (*Id.* at 96, 400.) Based on the foregoing, the court finds that the jobs identified by the VE are not incompatible with the limitations established by the ALJ.

   2.   *Need For a Bathroom Within Three Minutes*

According to Decker, the testimony of the VE cannot constitute substantial evidence to support the ALJ's step five determination because the VE failed to specify the number of positions available to Decker that could accommodate her need to be within three minutes of a restroom. (Dkt. No. 13 at 16-17.) Again the court disagrees.

In this case, in light of Decker's history of irritable bowel syndrome, the ALJ included the restriction that Decker "needs access to a ladies room within three minutes" in both his RFC determination and the hypothetical he posed to the VE. (Tr. at 28, 106-08.) Upon inquiry by the VE, the ALJ

---

[6] "Moderate" was defined on Dr. Long's medical source statement as "more than a slight limitation[,] but the individual is still able to function satisfactorily." (Tr. at 528.)

15

further added that Decker would need the ability to leave her work area to use such restroom. (*Id.* at 106-07.) On cross-examination, the VE explained that he had ruled out certain jobs for Decker, such as cashier, due to her need to be able to leave her work area and use the bathroom at will, but that an office helper position probably could accommodate such a restriction. (*Id.* at 110-11.) The VE also testified that an eight-hour work day typically includes two fifteen minute breaks and a meal break. (*Id.* at 110.) The VE agreed with Decker's counsel that some employers would require employees to use the bathroom only during these scheduled work breaks, and he could not say the specific number of employers who would allow access to the bathroom at will and whose restrooms were located within three minutes. (*Id.* at 111.)

In making his step five determination, the ALJ noted the VE's testimony regarding the impact a need for bathroom breaks has on the availability of jobs. (*Id.* at 31.) However, the ALJ concluded that, as Decker's irritable bowel syndrome was not a severe impairment,[7] based on the medical evidence of record, her need to use the bathroom was not as

---

[7] Notably, Decker does not contest the ALJ's severity determination in this respect. (*See generally* Dkt. No. 13.)

limiting as Decker's counsel suggested and would not prevent her from performing the jobs of office helper and mail-room clerk. (*Id.*) After reviewing the record, it is apparent that the VE's testimony took into account Decker's RFC, including her need to use the bathroom, and substantial evidence supports the ALJ's determination that more severe restrictions were not indicated. (*Id.* at 24, 369, 376); *see Alford v. Colvin*, No. 5:12-CV-977, 2013 WL 6839554, at *7, *11 (N.D.N.Y. Dec. 27, 2013) (holding that an ALJ did not err in failing to consult a VE, when a claimant's RFC included a need for "normal bathroom breaks due to Chron's disease," because the evidence indicated that Chron's disease did not interfere with the claimant's daily activities).

   3.   *Jobs Existing in Significant Numbers*

Finally, Decker argues that the VE's testimony was insufficient to support a finding that a significant number of jobs exist in the national economy that she can do because the VE failed to specify the number of positions for a mail-room clerk and office helper that exist in the national, state, and regional economy. (Dkt. No. 13 at 18-20.) The court agrees that remand is required, as the ALJ's determination is not supported by substantial evidence.

17

Importantly, the burden is on the Commissioner, at step five, to prove that a job exists in the national economy that the claimant is capable of performing. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *White v. Sec'y of Health & Human Servs.*, 910 F.2d at 65. As discussed above, when a claimant's nonexertional limitations significantly diminish her ability to perform the full range of work at any exertional level, then the ALJ should rely on "either the testimony of a VE or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations." *Bapp*, 800 F.2d at 606. "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). This definition assures that individuals are not denied benefits on the basis of "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] lives." *Id.* § 416.966(b). "Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb.13, 2009).

Here, the ALJ relied on the testimony of a VE and the DOT to

18

determine that Decker is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. at 31.) The VE testified that a hypothetical claimant with Decker's functional limitations and capabilities could perform the jobs of mail-room clerk and office helper, and provided numbers of positions that exist in the national and regional economy for those jobs. (*Id.* at 107.) However, upon questioning by Decker's counsel, the VE explained that the numbers to which he testified pertained to a broad range of positions, including jobs that Decker cannot perform based on her RFC. (*Id.* at 113.) Subsequently, the ALJ failed to make any inquiry into the foundation and reliability of the job numbers. (*Id.* at 113-14.) Under these circumstances, the VE's testimony does not constitute substantial evidence to support the ALJ's step five conclusion because it did not provide a "fair estimate of the jobs available" that Decker can actually perform. *Jones-Reid*, 934 F. Supp. 2d at 407 n.13; *see Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009) (concluding that a VE's testimony was reliable, where the VE acknowledged that the data on which she relied also encompassed approximately fifty-nine other DOT titles, because it was apparent that the VE arrived at her estimated figures for the positions which the claimant

19

could actually perform by discounting from the total numbers for all sixty DOT titles); *Rosa v. Colvin*, No. 3:12-CV-0170, 2013 WL 1292145, at *9-10 (N.D.N.Y. Mar. 27, 2013) (holding that the Commissioner did not sustain her burden at step five, where the ALJ relied on a VE's testimony concerning numbers of jobs available that pertained to a broad category of jobs, including those which the claimant could not perform). Accordingly, the matter must be remanded for further administrative proceedings.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 22, 2014
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court